IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STEPHEN PARISI,

    Plaintiff,

v.

KAISER FOUNDATION HEALTH PLAN LONG TERM DISABILITY PLAN,

    Defendant.

_____/

No. C 06-04359 JSW

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Now before the Court is the motion for summary judgment filed by Defendant Kaiser Foundation Health Plan Long Term Disability Plan ("Defendant") and the motion for summary judgment filed by Stephen Parisi ("Plaintiff"). Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, the Court hereby GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's motion for summary judgment.

**BACKGROUND**

This action arises from the denial of Plaintiff's claim for benefits under the Long Term Disability Plan ("the Plan") provided by his employer, Kaiser Foundation Health Plan, Inc. ("KFHP"). Plaintiff brought this action to challenge the denial of his claim for disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

Plaintiff was employed by KFHP as an Implementation Manager, commencing on May 1, 2000. (Declaration of Keith Shultz ("Shultz Decl."), ¶ 2.) KFHP sponsors the Kaiser Permanente Welfare Benefit Plan in which Plaintiff was a participant. (*Id.*) Plaintiff's position was eliminated in 2004 and he received a severance package which required that Plaintiff and KFHP enter a separation and release agreement in which Plaintiff released any claims of any kind relating to his employment with KFHP expressly including any claims under ERISA (but excluding claims for vested retirement benefits or benefits under COBRA, which were expressly carved out of the release). (*Id.*, Ex. 1 at ¶ 4.)

The Release, signed by Plaintiff on June 1, 2004, specifically provides that:

> [i]n consideration of the separation payments and benefits described ... above, Parisi hereby releases and forever discharges Health Plan and any affiliated or related companies or divisions, ... from any and all claims of any and every kind, nature and character, known and unknown, including, ... but not limited to ... which have transpired prior to the date of execution of this Agreement and Release and which relate to Parisi's employment with Health Plan, or his separation from employment, or from any employment-related dealings of any kind .... This includes, but is not limited to ... the Employment Retirement Income Security Act of 1974, as amended, ... and all claims to salary, salary continuation, vacation, insurance, benefits (with the exception of vested retirement benefits or any benefits which Parisi is entitled under COBRA) and/or compensation, except as specifically enumerated in this [Release].

(*Id.*, Ex. 1 at 3.)

There is no dispute that Plaintiff signed the Release and, in exchange, received a severance package. Whether or not MetLife was aware of the Release,[1] there is no dispute that the denial of long-term benefits was not premised upon the Release.

Over one year later, Plaintiff submitted a claim for long term disability benefits under the Plan, alleging that he had become disabled as of February 27, 2004. KFHP is the Plan's sponsor and the Plan administrator. Long term benefits under the Plan were funded by Metropolitan Life Insurance Company ("MetLife"), which also acted as the claim administrator. Three independent, Board-certified physicians separately opined that Plaintiff was not functionally impaired from performing sedentary work and was not therefore disabled from his

---

[1] Defendant contends that KFHP did not provide MetLife with a copy of the Release. (Def. Motion at 6 n.6). However, Plaintiff submits a letter from counsel indicating that MetLife was "fully aware" of the Release, but did not use it as a reason for denial of benefits. (Declaration of Thorton Davidson in Opposition, Ex. 2.)

own occupation. On that basis, MetLife found Plaintiff ineligible for long term disability benefits and denied his claim and his appeal.

The Court will address any additional specific facts as required in the analysis.

**ANALYSIS**

**A. Legal Standard on Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A party moving for summary judgment who does not have the ultimate burden of persuasion at trial, must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A party who moves for summary judgment who does bear the burden of proof at trial, must produce evidence that would entitle him or her to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden*, 213 F.3d 474, 480 (9th Cir. 2000).

Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). It is not the Court's task to "scour the record in search of a genuine issue of triable fact." *Id.* (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 723, 735 (9th Cir. 1997).

**B.  Defendant's Affirmative Defenses.**

In his claim for long term benefits, Plaintiff alleged that he had become disabled on February 27, 2004. (Admin. 0598.) Subsequently, on June 1, 2004, Plaintiff signed general releases which released all claims relating to his employment with KFHP which had occurred prior to the execution of the releases. (Shultz Decl, Ex. 1.) In the Release, Plaintiff expressly released claims arising under ERISA, as well as claims for insurance and benefits. The Release expressly carved out exceptions to the waiver for vested retirement benefits and benefits under COBRA. There is no triable issue of material fact as to the applicability of the Release.

Plaintiff released Defendant by executing the agreement and is therefore barred from bringing this action. *See Bennett v. CNA Insurance Companies*, 2001 WL 30533, * 4 (N.D. Cal. 2001) (granting summary judgment where plaintiff signed an agreement expressly releasing claims under ERISA); *see also Piehl v. Metropolitan Life Insurance Co.*, 2005 WL 627586, *2 (D. Or. 2005) (same). In *Bennett*, the court held that the terms of the release were unambiguous and that the plaintiff knowingly and voluntarily released her claims to employee disability benefits:

> This conclusion is reinforced by the fact that the Settlement specifically exempted vested pension benefits, which shows that the parties discussed at least one employee benefit plan and knew how to exclude it from the general release in crafting the Settlement. The exclusion of pension benefits demonstrates that the parties did not regard employee benefits as being outside the scope of the Settlement unless expressly excluded. Thus, the parties knew the other employee benefits would be released by the settlement.

*Id.* at * 5.

The same general release and limited exclusions are present in the Release signed by Plaintiff. The broad language of the Release is unambiguous and unequivocally establishes that

4

on June 1, 2004, Plaintiff knowingly and voluntarily waived his claim that he had become disabled three months before on February 27, 2004. Under similar holdings in this court, the Court GRANTS summary judgment for Defendant on their affirmative defense of waiver.

Plaintiff contends that the Release was not part of the administrative record and was not the reason that he was denied long term benefits. Therefore, Plaintiff contends that the Court would err by exercising its discretion to review material outside of the administrative record to review the denial for abuse of the administrator's discretion. In support of his contention, Plaintiff cites cases in which the reviewing courts determined that the district court abused its discretion by reviewing material outside of the administrative record on review of a denial decision. *See, e.g., Opeta v. Northwest Airlines Pension Plan*, 484 F.3d 1211, 1219-1220 (9th Cir. 2007) (holding that district court erred by admitting post-denial evidence of a videotape demonstrating claimant was not disabled which was not part of the administrative record); *see also Orndorf v. Paul Revere Life Insurance Co.*, 404 F.3d 510, 519 (1st Cir. 2005) (holding that it would have been error to admit post-denial medical evidence in an attempt to open the administrative record).

The Court does not find that the review of the Release is similar to the admission of post-denial medical evidence. Here, the Court is not opening up the administrative record or reviewing the administrator's denial under an abuse of discretion standard. Rather, the Court reviews the Release as part of Defendant's affirmative defense of waiver and, because the agreement is central to the relationship between the parties, the Court finds it material. *See id.* at 520 ("There may be times when it is appropriate for courts to hear new evidence. Where the challenge is not to the merits of the decision to deny benefits," outside evidence may be relevant.) The Court also finds that the Release is integrated and unambiguous, so no extrinsic evidence is permitted. *See Bennett*, 2001 WL 30533 at * 4.

Plaintiff then contends that heightened scrutiny is required to determine whether the waiver of ERISA pension benefits was knowing and voluntary. Federal courts consider a balance of facts to examine the totality of the circumstances. Those non-exclusive factors include: "(1) plaintiff's education and business sophistication; (2) the respective roles or

5

employer and employee in determining the provisions of the waiver; (3) the clarity of the agreement; (4) the time plaintiff had to study the agreement; (5) whether plaintiff had independent advice, such as that of counsel; and (6) the consideration for the waiver." *Morais v. Central Beverage Corp. Union Employees' Supplemental Retirement Plan*, 167 F.3d 709, 713 n.6 (1st Cir. 1999).

Here, the undisputed facts and the plain language of the Release indicate that: Plaintiff has a college degree as well as 15 years experience as a manager or principal consultant (Admin. 0588); the language of the Release is clear and unambiguous (Shultz Decl., Ex. 1 at 3); the Release provides that Plaintiff had up to 21 days following receipt of the agreement to consider its terms and seven days to revoke the agreement after its signing (*id.* at 6); Plaintiff was advised to consult with an attorney before signing the Release (*id.*); and the consideration for the waiver was somewhere in the six-figure range. (Def. Opp. at 17.) The Court finds, weighing the factors, that Plaintiff's waiver of ERISA pension benefits was knowing and voluntary. *See Morais*, 167 F.3d at 713. Therefore, the Court GRANTS summary judgment for Defendant on its affirmative defense of waiver.

**C.     Denial of Benefits Was Not an Abuse of Discretion.**

Regardless whether the Court would grant summary judgment in favor of Defendant due to Plaintiff's release of any ERISA claims, the Court finds that the appropriate standard of review is abuse of discretion and that the administrator did not abuse its discretion.

ERISA allows a participant in an employee benefit scheme to bring a civil action to recover benefits due under the terms of a plan. 29 U.S.C. § 1132(a)(1)(B). Courts review a denial of benefits challenged under § 1132(a)(1)(B) "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). However, where there is a proper grant of discretion, the deferential abuse of discretion standard is triggered. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999). Here, Plaintiff concedes that the abuse of discretion standard should apply to these motions. (Plaintiff's Motion at 14.) Further, the Court finds there is no ambiguity in the

language conferring discretion upon MetLife; it clearly assigns discretion and authority to construe and interpret the policy and to decide all questions of eligibility and entitlement to any policy benefits to MetLife. *See, e.g., Abatie v. Alta Health and Life Ins. Co.*, 458 F. 3d 955, 963-64 (9th Cir. 2006) (holding that there are no "magic" words that conjure up discretion on the part of the plan administrator, but the granting of the power to interpret plan terms and to make final benefits determinations confers discretion on the plan administrator).

**D.      Denial of Coverage Decision Reviewed for Abuse of Discretion.**

The abuse of discretion standard requires only a minimal showing. *Snow v. Standard Ins. Co.*, 87 F.3d 327, 331 (9th Cir. 1996) (holding that the abuse of discretion standard does not permit the overturning of a decision where there is relevant evidence that reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence). "It is an abuse of discretion for an ERISA plan administrator to make a decision without any explanation, or in a way that conflicts with the plain language of the plan, or that is based on clearly erroneous findings of fact." *Id.* "The mere fact that the plan administrator's decision is directly contrary to some evidence in the record does not show that the decision is clearly erroneous. Rather, review under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed. That standard certainly does not permit the overturning of a decision where there is substantial evidence to support the decision, that is, where there is relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Id.* at 331-32 (internal citations omitted).

After careful review of the record, the Court finds there is relevant evidence that reasonable minds might accept as adequate to support the conclusion that Plaintiff was not entitled to long term disability benefits. MetLife credited the opinions of three reviewing physicians and notified Plaintiff that his claim was denied because the medical documentation did not establish that he was functionally impaired from performing his own occupation. (Admin. 0099, 0211, 0391-95, 0423-25.) MetLife did not require the doctors to opine whether Plaintiff was disabled based upon the Plan definition, but rather the doctors were asked to opine

7

about Plaintiff's functional capacity. There were no records supporting a contention that he was unable to work due to Plaintiff's status as HIV positive. (Admin. 0428, 0407.) With regard to the diagnosis of bipolar disorder, Plaintiff's physicians did not provide any records until after the initial claim and the appeal were denied. Those records, when finally produced, indicated that he had normal mental status, with no evidence of cognitive function impairment. (Admin. 0213-14.) In addition, the records indicated that Plaintiff refused to comply with treatment for his diagnosis of alcohol abuse and that he admitted that he was not interested in working and quit his job to get the severance package. (*Id.*) Based on these facts, the Court finds that the denial of long term benefits was not an abuse of discretion.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED. Judgment shall be entered in favor of Defendant Kaiser Foundation Health Plan Long Term Disability Plan. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: January 25, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE